IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD L. PALMER, | : | No. 4:05-cv-1974 |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| LINDA S. McMAHON, | : | |
| Commissioner of Social | : | |
| Security, | : | |
| Defendant | : | |

## MEMORANDUM

### February 2, 2007

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

On December 15, 2006, Magistrate Judge Blewitt filed a Report and

Recommendation (doc. 9) reviewing the appeal of the Commissioner's decision to

deny Plaintiff Ronald L. Palmer's ("Plaintiff") claim for Social Security Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]

Magistrate Judge Blewitt found that substantial evidence existed to support the

Commissioner's decision and recommended that the appeal be denied.

On January 5, 2007, Plaintiff filed objections to the Magistrate Judge's

---

[1] Linda S. McMahon became the Acting Commissioner of Social Security, effective January 20, 2007 to succeed Jo Anne Barnhart.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Linda S. McMahon is automatically substituted as the defendant in this action.

report.  (Rec. Doc. 10).  On January 12, 2007, the Commissioner filed a response

to the Plaintiff's objections.  This matter is now ripe for disposition.

## PROCEDURAL HISTORY:

The Plaintiff protectively filed an application for DIB on August 1, 2003,

alleging disability since December 2, 2002 due to lumbar sprain and spinal

stenosis.  The state agency denied his claim on October 30, 2004.  Plaintiff

requested and was granted a hearing before an administrative law judge ("ALJ") on

March 22, 2005.  At the hearing, the Plaintiff, unrepresented by counsel, testified.

A vocational expert ("VE") also testified and the ALJ issued a decision on April

13, 2005 denying the Plaintiff's claims.

On June 17, 2005, the Plaintiff filed a request for review of the ALJ's

decision by the Appeals Counsel.  The request was denied by the Appeals Council

on July 27, 2005, making the ALJ's decision the final decision of the

Commissioner.   The ALJ's decision is the subject of this appeal.  The Plaintiff

contended that the ALJ erred in 1) relying on the non-examining medical expert

who testified at the claimant's administrative hearing; 2) ignoring all the

allegations of disabling pain and other non-exertional impairments; 3) concluding

an improper residual functional capacity; 4) failing to sustain his burden at step

five of the sequential evaluation process; and 5) Plaintiff contends that the case

should be remanded solely for a calculation of benefits.  On December 15, 2006,

Magistrate Judge Blewitt filed the instant Report and Recommendations (doc.9)

recommending that the Plaintiff's appeal be denied.

**STANDARDS OF REVIEW**:

    **A.**    **Review of Magistrate Judge's Report**

When objections are filed to a report of a magistrate judge, we make a *de

novo* determination of those portions of the report or specified proposed findings or

recommendations made by the magistrate judge to which there are objections.  <u>See

United States v. Raddatz</u>, 447 U.S. 667 (1980); <u>see also</u> 28 U.S.C. §636(b)(1);

Local Rule 72.3l.  Furthermore, district judges have wide discretion as to how they

treat recommendations of a magistrate judge.  <u>See id.</u>  Indeed, in providing for a *de

novo* review determination rather than a *de novo* hearing, Congress intended to

permit whatever reliance a district judge, in the exercise of sound discretion,

chooses to place on a magistrate judge's proposed findings and recommendations.

<u>See id.</u>, <u>see also</u> <u>Mathews v. Weber</u>, 423 U.S. 261, 275 (1976); <u>Goney v. Clark</u>,

749 F.2d 5, 7 (3d Cir. 1984).

    **B.**    **Review of the Denial of Disability Benefits**

When reviewing the denial of disability benefits, the Court must determine

whether the denial is supported by substantial evidence.  <u>Brown v. Bowen</u>, 845

F.2d 1211, 1213 (3d Cir. 1988); <u>Mason v. Shalala</u>, 994 F.2d 1058 (3d Cir. 1993).

Substantial evidence "does not mean a large or considerable amount of evidence,

but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552 (1988); <u>Hartranft v.

Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999).  It is less than a preponderance of the

evidence but more than a mere scintilla.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401

(1971).

To receive disability benefits, a claimant must demonstrate an "inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity
> that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

### C.   Eligibility Evaluation Process

A five-step evaluation process is used to determine if a claimant is eligible

for disability benefits.  See 20 C.F.R. § 404.1520.  See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a claimant is not disabled at any point in the five-step sequential process, the review does not proceed.  20 C.F.R. § 404.1520.

Step one requires a claimant to establish that he has not engaged in "substantial gainful activity."  20 C.F.R. § 404. 1520(b).  Step two is an evaluation of whether the claimant has a severe impairment.  20 C.F.R. § 404.1520(c).  At step three, the Commissioner must then determine whether the claimant's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.  20 C.F.R. § 404.1520(d).

If the Commissioner determines that the claimant's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the claimant has established that he is unable to perform his past relevant work.  20 C.F.R. §§ 404.1520(e)-(f). The claimant bears the burden of demonstrating an inability to return to his past relevant work.  Plummer, 186 F.3d at 428.  If the claimant is able to demonstrate this, then the burden of proceeding shifts to the Commissioner, at step five, to demonstrate that other jobs exist in significant numbers in the national economy that the claimant is able to perform, consistent with his medically determinable

impairments, functional limitations, age, education and work experience.  20

C.F.R. §§ 404.1520(g), 404.1560(c).  The Commissioner is also to consider the

claimant's stated vocational factors.

## FACTUAL BACKGROUND:

### Plaintiff's Work History and Injury

The Plaintiff, forty-six years old at the time of his alleged disability onset,

was considered to be a "younger individual" under the Regulations.  20 C.F.R. §

404.1563.  Plaintiff has a high school education and training as a welder and holds

a commercial driver's license.  Plaintiff last worked on December 2, 2002, when he

stated that he stopped working because he was "unable to do [his] job [because of

a] lot of pain and discomfort."  (Record at 82).

Plaintiff sustained a back injury on December 2, 2002, while unloading a

truck at work.  (Record 192).  As a result o this injury, Plaintiff receives workers'

compensation in the amount of $400.00 per week.  (Record at 28).  He also

receives long-term disability in the amount of $433.00 per week.  (Record at 28).

Plaintiff testified that he still receives these amounts but receives no other income.

(Record at 28).  Plaintiff was prescribed Naproxen, 500 milligrams, twice a day,

for pain.  He testified that he probably takes "it at least every other day . . . I don't

take it every day.  I try not to."  (Record at 35).

Plaintiff worked as a tractor-trailer driver and truck mechanic for Frito-Lay since 1988.  (Record at 29).  He mainly worked as an over-the-road truck driver unloading trailers.  Plaintiff testified that, as a truck driver, the heaviest weight he lifted was about eighty pounds over his head. Plaintiff testified that he was lifting that weight on the day he was injured.  (Record at 29-30).

Plaintiff also testified that he worked as a truck mechanic for Frito-Lay for approximately fifteen months, from July 1991 to September 1992.  (Record at 29). While doing this work, Plaintiff testified that the heaviest he lifted was a tire of about eighty to ninety pounds.  (Record at 31).

As a result of his injury, Plaintiff stated that he cannot now work, because of "mostly like pain in [his] back.  Like I can only like drive an hour."  (Record at 31-32).  The pain in his back is "pretty constant" and also causes pain and numbness in his left leg.  (Record at 32, 33).  He testified that he can walk for about forty-five minutes and he can stand for about forty-five minutes to one hour at a time, while moving around.  (Record at 32-33).  He testified that he sleeps consecutively for about three hours a night and then needs to get up to move around due to his "uncomfortableness."  (Record at 38).  Plaintiff believes that he now could probably lift twenty pounds "easy enough."  (Record at 34).  He is still able to do some  housework, like doing laundry, paying bills, making a daily trip to the

grocery store, and cooking meals.

Medical Treatment for Injury

Plaintiff was treated by James Della Valle, M.D., for the back injury he sustained at work on December 2, 2002.  (Record at 187).  He was sent for an MRI of his lumbar spine on December 14, 2002.  (Record at 123).  James N. Frangos, M.D., indicated that the MRI showed degenerative change at the L4-5 level, mild overall canal stenosis and moderate lateral recess narrowing, hypertrophy of the posterior elements, a greater extension of disc material into the neural forament on the left consistent with a lateral foraminal herniation without compression of the exiting L4 nerve, posterolateral disc bulging at L2-3 and L3-4; and lateral recess narrowing at L5-S1 secondary to a combination of disc bulging and hypertrophy of the posterior elements.  (Record at 123).

On January 7, 2003, Mario R. Brezler, M.D., treated Plaintiff on January 7, 2003.  (Record at 206).  Dr. Brezler assessed Plaintiff to have a herniated lumbar disc at L4/L5 and L5/S1 with lateral foraminal herniation.  (Record at 205).  Dr. Brezler noted that Plaintiff was able to walk on tiptoe and heels, but with pain on the left side and that Plaintiff had significant pain in lateral flexing, rotating and raising.  (Record at 204).

On January 23, 2003, Plaintiff treated with Eric H. Wolfson, M.D., for a

neurosurgical consultation.  (Record at 128-130).  Dr. Wolfson noted that Plaintiff

complained of low back pain for six weeks, and numbness and tingling of the

lower extremities.  (Record at 128).  Dr. Wolfson noted that Plaintiff was "sitting

in a chair comfortably in no acute distress."  (Record at 128).  Dr. Wolfson also

noted that there was no paravertebral tenderness elicited on palpation of the lumbar

area; Plaintiff was able to lift his leg straight to ninety degrees with no pain; motor

strength testing of the lower extremities was 5/5 throughout; the sensory exam was

normal; reflexes were equal; Babinski sign was negative; and gait was smooth and

coordinated.  (Record at 128).  Dr. Wolfson recommended conservative treatment

with physical therapy of the lumbar spine and a follow up appointment.  (Record at

129).

    In April 2003, Plaintiff treated with Dr. Wolfson for his follow up

evaluation.  Plaintiff stated that his symptoms were exacerbated with prolonged

walking and lying on his side and that he was having difficulty sleeping due to his

symptoms.  Plaintiff also stated that physical therapy had decreased his pain.

(Record at 125).  Plaintiff indicated that he was taking Viocdin PRN and Naproxen

for pain relief.  (Record at 125).  Again, there was no paravertebral tenderness

elicited on palpation of the lumbar area; Plaintiff was able to raise his leg fully to

ninety degrees with mild pain on the left side and no pain on the right side.  Motor

strength testing in the lower extremities was 5/5 throughout; Plaintiff was neurologically stable; and gait was smooth and coordinated.   (Record at 125).

On April 7, 2003, Plaintiff treated with Charles R. Reina, M.D., an orthopedic surgeon.  (Record at 138).  Dr. Reina opined that Plaintiff has "a moderate to marked, temporary and partial disability with a fair prognosis." (Record at 139).  Dr. Reina recommended aqua therapy two to three times a week for four to six weeks.  (Record at 139).  He also recommended that the Plaintiff could return to work with the restrictions of lifting no more than twenty to thirty pounds, no irregular surfaces or unprotected climbing, no bending or reaching below knee level, no overhead reaching, sitting for no more than thirty to forty minutes at a time, standing for up to fifteen to twenty minutes, and frequent positional changes.  (Record at 139).

On May 20, 2003, Dr. Della Valle completed a report recommending "surgery eventually because of the disability resulting from this disc herniation." (Record at 165).  Dr. Della Valle's report also noted that the Plaintiff was reluctant to have surgery and that his neurosurgeon felt that Plaintiff's symptomatology was not severe enough to warrant surgery.

On August 2, 2003, Plaintiff treated with neurosurgeon Donald D. Davis, M.D., who opined that Plaintiff's "degree of disability was temporary, partial and

mild in severity." (Record at 210). He further opined that "regarding [Plaintiff's]

return to work, form a neurological standpoint, there is no impairment or restriction

implied." (Record at 211). However, Dr. Davis did state that based on the

subjective symptoms, Plaintiff did not appear to be capable of performing his

duties as a truck driver due to the required prolonged sitting. (Record at 211).

Walid Hammoud, M.D. evaluated Plaintiff on September 23, 2003 and

December 2, 2003 for follow up visits at United Occupational Medicine. Dr.

Hammoud noted that Plaintiff reported continued pain in the lower back and left

leg and the pain is usually alleviated by Naproxen or over the counter medicine.

(Record at 216). He noted that although Plaintiff was still unable to work, it was

mostly because of subjective symptoms of lower back pain and discomfort.

(Record at 217). Dr. Hammoud found Plaintiff to be partially disabled and capable

of lifting up to thirty pounds. (Record at 218). He opined that Plaintiff should be

encouraged to have "vocational rehabilitation for a desk job or other job [rather]

than truck driving. Meanwhile, I did recommend him to see another physician for

a second opinion to see if surgery can help his pain. Although, it may not

completely help him to recover to go back to his past job." (Record at 217).

Dr. Hammoud's December 2003 report states that Plaintiff still reported pain

and there was "no basic improvement." (Record at 233). Dr. Hammoud believed

Plaintiff should have a second and third opinion to determine whether surgery "would solve the problem and let him go back to work." (Record at 233). An appointment to see a Dr. Gotman was made, but Plaintiff "missed that appointment altogether claiming that he was sick that day." (Record at 233). He found Plaintiff to have a marked partial disability, and noted that Plaintiff "cannot be in complete disability until I try him by two or three opinions that he is really disabled and nothing can be done." (Record at 232-233).

A Residual Functional Capacity (RFC) Assessment was completed by Mary Ryczak, M.D., a state agency physician on October 20, 2003. She found that Plaintiff could occasionally lift up to twenty pounds; frequently lift up to ten pounds; stand and/or walk, with breaks, up to six hours in an eight hour work day; push and/or pull unlimitedly, and occasionally climb. (Record at 220-221). She found there were no manipulative limitations, no visual limitations, no communicative limitations and no environmental limitations. (Record at 222-223).

On March 8, 2004, Plaintiff was treated by Steven Jaditz, D.O., who renewed Plaintiffs prescription for Naproxen. (Record at 247). On April 27, 2004, Plaintiff reported "significant pain" and Dr. Jaditz assessed chronic lumbar disease with radiculopathy. (Record at 244). Dr. Jaditz continued to treat Plaintiff until

October 2004, every few weeks, or as needed.  Dr. Jaditz recommended Plaintiff to "continue activity as tolerated," and to continue taking Naproxen.  (Record at 242).

Expert Testimony at Hearing

At the hearing before the ALJ, the VE  testified that a tractor-trailer truck driver qualified as a semi-skilled occupation in the medium exertion range. (Record at 40).  The VE further testified, however, that because of the heavy lifting Plaintiff did, it was elevated to the heavy exertional range.  (Record at 40).  The VE also testified that a truck mechanic was a skilled occupation in the heavy exertional range.  (Record at 40).

Also at the hearing, medical expert (ME) Leo J. Carazza, M.D., testified that although Plaintiff suffered from low back pain for quite a while, he did not believe that the Plaintiff met the listing under Section 1.04(c).  (Record at 25-27).  He opined that Plaintiff would only be able to do light[2] or sedentary[3] work.

---

[2] 20 C.F.R. § 404.1567(b) defines "light work" follows: involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

[3] 20 C.F.R. § 404.1567(a) defines "sedentary work" as follows: involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary

The VE testified that Plaintiff could not return to his past relevant work involving stooping, bending, twisting, lifting above the shoulder level, or climbing or crawling.  (Record at 41).  The VE did testify that there are other jobs that Plaintiff could perform, namely jobs as a visual inspector, acceptance and rejection inspector, video surveillance monitor, and security clerk.  (Record at 41).  The VE noted that there are many of these jobs in Northeast Pennsylvania and they are available in essentially all regions of the state and nation.  (Record at 41-42).

**DISCUSSION:**

As noted earlier within this Memorandum, Plaintiff maintained that the ALJ erred in five different areas when denying his disability claim.  Magistrate Judge Blewitt reviewed the Plaintiff's contentions that the ALJ erred and concluded that the ALJ did not.   Plaintiff now objects to the Magistrate Judge's report on those same five grounds.  We shall discuss the merits of each of Plaintiff's objections in turn.

> **1.      That the ALJ Erred in Relying Upon the Non-Examining Medical Expert who Testified at the Plaintiff's Administrative Hearing**

Plaintiff objects to the portion of the Magistrate Judge's report that concluded the ALJ's decision that the Plaintiff did not have a disability for a

---

if walking and standing are required occasionally and other sedentary criteria are met.

continuous period of least 12 months was supported by substantial evidence.  In particular, Plaintiff argues that the ALJ accorded inappropriate weight to the testimony of non-treating physicians and the medical expert.

Plaintiff argues that although the ALJ "mention[s]" the various findings of treating physicians, he did not really provide any credit to those opinions when determining that the Plaintiff was not considered disabled under the Regulations. Plaintiff essentially argues that the ALJ erred by agreeing with the ME's RFC.

Our review of the ALJ's decision reveals that Plaintiff's arguments are meritless.  The ALJ *specifically* referenced the recommendations and findings of Dr. Della Valle and Dr. Wolfson, both of whom are Plaintiff's treating physicians. To be sure, between December 2002 and 2004, Plaintiff was seen by a variety of physicians, some of whom were treating physicians and others who performed independent medical evaluations of the Plaintiff.  However, as was outlined in great detail in an earlier portion of this Memorandum, a common theme was recurrent in the reports of these physicians.  All that rendered opinions on Plaintiff's ability to work concluded he could not return to his pre-injury post as a truck driver, and several concluded that he was capable of lighter work. Furthermore, we do not agree with the Plaintiff's assertion that the ALJ only relied on the ME's opinion.  A review of the ALJ's decision plainly reveals that the ALJ

considered the entire record of medical evidence when determining that the Plaintiff could perform a limited range of light and sedentary work.  The fact that the ALJ borrowed the terms used by the ME is of no moment; his analysis, in our opinion, was based upon the thorough record, and is clearly supported by substantial evidence.

The Plaintiff's first objection is therefore overruled.

## 2.    That the ALJ Improperly Ignored and Discounted the Allegations of Non-Exertional Impairments

Plaintiff objects to the portion of the Magistrate Judge's report that concludes that the ALJ did not ignore Plaintiff's allegation of pain and non-exertional impairments.  Magistrate Judge Blewitt found that the ALJ's determination that the Plaintiff was not fully credible in his allegations of pain and non-exertional limitations was based on substantial evidence.

When considering a claimant's subjective complaints of pain, an ALJ engages a two-step analysis.  First, the ALJ must determine if the alleged disabling pain could reasonably result from the medically determinable impairment; and second, the ALJ must consider the intensity and persistence of the claimant's disabling pain, and the extent to which it affects his ability to work.  See Diaz v. Commissioner of Social Security, 39 Fed. Appx. 713, 714 (3d Cir. June 12, 2002).

In particular, the ALJ held:

> Upon noting the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms. However, the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible. The claimant's activities at home, including the ability to perform most household chores, do not reflect disability.

(Record at 14). Therefore, based on the evidence presented and the testimony at the hearing, the ALJ found the Plaintiff not entirely credible. It is well established that "an ALJ's findings based on credibility of the applicant are to be accorded with great weight and deference, particularly since an ALJ is charge with the duty of observing the witness's demeanor and credibility." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997); Frazier v. Apfel, 2000 WL 288246 (E.D. Pa., March 7, 2000).

Plaintiff testified at the hearing that he wakes up every morning around 3:30 a.m. to make his girlfriend's lunch. He then goes back to bed until 6:00 a.m. when he again wakes up to help his girlfriend's children get ready for school. Beginning around 7:30 a.m. he does housework, including straightening up, doing laundry, paying bills, making a daily trip to the grocery store, and cooking dinner. After dinner, he cleans up and goes to sleep around 10:30 p.m. (Record at 35-38). Plaintiff opined that he could only sit for one hour, stand for one hour and walk for

forty-five minutes.  (Record at 32-33).

The ALJ found that the Plaintiff's injury could reasonably be expected to produce the alleged symptoms of pain, however he found that the Plaintiff was not fully credible regarding the intensity, duration and limiting effects of the symptoms.  The ALJ referenced this testimony given by Plaintiff in his conclusion that the Plaintiff was not entirely credible regarding his subjective complaints of pain.

Again, as previously mentioned, an ALJ's credibility determinations are entitled to deference by this Court, because the ALJ is in the better position to assess credibility of the Plaintiff, inasmuch as the ALJ heard the Plaintiff's testimony firsthand, and was able to observe the Plaintiff at that time.  It's clear that the ALJ did not "ignore" or "discount" the Plaintiff's allegations of non-exertional impairments, and based upon the evidence cited by the ALJ to support his determination, we find that the ALJ's determination regarding the Plaintiff's credibility to be supported by substantial evidence.

Accordingly, Plaintiff's second objection is overruled.

### 3.    That the ALJ Reached an Improper Conclusion Regarding RFC

The Plaintiff objects to the portion of the Magistrate Judge's report in which the Magistrate Judge concludes that the ALJ made an appropriate determination of

18

the Plaintiff's RFC.[4]  Specifically, the ALJ found that the Plaintiff was "limited to

performing light and sedentary work , with only occasional stooping, bending,

twisting, climbing, crawling and lifting above shoulder level." (Record at 15).

Plaintiff essentially argues that the RFC determined by the ALJ was

incorrect because it is too vague.  We agree with the Defendant that this argument

is "specious at best."  (Rec. Doc. 11 at 8).  As noted by the Magistrate Judge, the

ALJ questioned both the ME and the VE about the Plaintiff's abilities.  The terms

light work and sedentary work were defined by the ME at the hearing, and the ME

testified that his conclusions were based on the definitions of those terms.

Furthermore, the ALJ found specific non-exertional limitations in regard to

stooping, bending, twisting, lifting above shoulder level, climbing and crawling.

The ALJ apprised the VE of those limitations when he questioned the VE about

other jobs the Plaintiff could perform, since it was agreed he could not perform his

past relevant work.

In sum, there was nothing vague or inappropriate about the ALJ's

determination of the Plaintiff's RFC.  In fact, we find that the RFC announced by

the ALJ was thoughtful.  The ALJ did not adhere strictly to the definitions of light

---

[4] Residual functional capacity is defined as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations."  20 C.F.R. §404.1545(a).

or sedentary work, but included particular limitations to those definitions in

determining the Plaintiff's RFC.  The ALJ did not merely align himself with the

ME's testimony, but considered the balance of the evidence and testimony before

him in rendering his conclusion.

Accordingly, the Plaintiff's third objection is overruled.

### 4.      That the Commissioner Failed to Sustain his Burden at Step Five of the Sequential Evaluation Process

Plaintiff objects to the portion of the Magistrate Judge's report that

concludes the ALJ appropriately found the Commissioner to have  sustained his

burden at step five of the sequential evaluation process.  The final and fifth step of

the sequential evaluation process requires an analysis of whether the Plaintiff,

based on his age, experience, education, and RFC and limitations, can perform any

other work in the national economy.  See Plummer 186 F. 3d at 428; Burnett v.

Comm. of SSA,, 220 F.3d 112, 126 (3d Cir. 2000).  To sustain the burden at this

stage, the Commissioner must produce evidence of the existence of other work that

a claimant can perform.  See Fargnoli v. Massanari, 247 F.3d 34, 39 (3d Cir. 2001).


At the hearing, the ALJ posed a hypothetical question to the VE containing

all of the Plaintiff's impairments which were supported by the record.  The

Plaintiff's argument that the questions posed to the VE were improper is baseless. Our review of the record finds the questions to be thorough and entirely appropriate.

We find that the Commissioner's burden was satisfied when the VE testified that the Plaintiff could perform a combined total of more than 5,000 jobs in the regional economy as a visual inspector, video surveillance monitor, security clerk and bench worker.  (Record at 40-41).  See Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987)(noting that even 200 jobs in a given region is a clear indication of substantial gainful work in the national economy).   Based on the foregoing, we find that the Commissioner's burden was met at step five, and the ALJ did not err in this regard.

Accordingly, the Plaintiff's fourth objection is overruled.

## **CONCLUSION**

Accordingly, for the foregoing reasons, the Plaintiff's objections to the Report and Recommendation of Magistrate Judge Blewitt are overruled in their entirety.  Therefore, we shall adopt the report in its entirety and shall deny the Plaintiff's appeal.  An appropriate Order shall issue.

s/ John E. Jones III
John E. Jones III
United States District Judge